UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                     **Hon. Hugh B. Scott**

v.

                     12CR88S

JOSE GONZALEZ,               **Order**
LUIS OSORIO,

       Defendants.

  This matter is referred to the undersigned to hear and determine pretrial matters pursuant to 28 U.S.C. § 636 (b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C. § 636(b)(1)(A) (Docket No. 4).

  The instant matter before the Court is defendant **Luis Osorio's motion for a Daubert[1] hearing** (Docket No. 15) as to the DNA that was used to establish Osorio's possession of the weapons at issue in this case. Defendant Jose Gonzalez joins in this motion (see text minute entry, July 6, 2012)[2].

  The Government has filed responding papers (Docket No. 16, Gov't Response in Opposition to Def. Motion for a Daubert Hearing), to which Osorio replied (Docket No. 17), and

---

[1] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999); Fed. R. Evid. 702.

[2] Gonzalez previously filed an omnibus discovery motion, Docket No. 11, to which Osorio joined. This Court separately considered the relief sought therein, Docket No. 22, Order of Sept. 18, 2012.

oral argument was heard on August 20, 2012 (text minute entry, Aug. 20, 2012), with this Court initially reserving decision on this motion as well as Gonzalez' omnibus motion. Osorio then filed additional, supplemental papers on his motion (Docket No. 18, Osorio Supp'al Memo.). This Court granted the Government leave to respond to them by September 18, 2012, and the Daubert motion would be deemed submitted on September 18, 2012 (Docket No. 19). The Government later moved for additional time to respond (Docket No. 20), which was granted (Docket No. 21). The Government's response now was due by September 24, 2012 (id.), and the Government filed a timely response (Docket No. 23). This motion was deemed submitted on September 24, 2012 (Docket No. 21).

**BACKGROUND**

Defendants are charged with several counts of felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); possession of a short-barreled shotgun, in violation of I.R.C. §§ 5822, 5845(a), (1), 5861(c), 5871, and 18 U.S.C. § 2; possession of unregistered short-barreled shotgun, in violation of I.R.C. §§ 5841, 5845(a), 5861, and 18 U.S.C. § 2; possession of a defaced firearm, in violation of 18 U.S.C. §§ 922(k), 924(a)(2), 2, with forfeiture allegations (Docket No. 3, Indict.). This stems from defendants alleged possession of a Mossberg Model 500A 12-gauge shotgun and 12-gauge shells on December 14, 2011. According to the Government (Docket No. 16, Gov't Response at 2-3), Buffalo Police officer spotted a vehicle believed to have been stolen with two occupants in it. After pursuit in the lower west side of Buffalo, the vehicle stopped in a parking lot on Carolina Street. As the officer exited the police car, Gonzalez exited the driver's side of the vehicle and Osorio exited from the passenger side and ran, but was apprehended a short while later. The

officer returned to the vehicle and saw a sawed off shotgun in the back seat of that vehicle directly behind the front passenger seat (Osorio's). (Id.) The shotgun was determined to be a Mossberg Model 500A 12-gauge shotgun, with a defaced serial number, and barrel length of 16 5/8 inches, and loaded with one 12-gauge round. An additional round of 12-gauge shot was found in that back seat. (Id. at 3.) Both defendants are convicted felons and the Government alleges that the shotgun was manufactured in Connecticut (id.).

The shotgun was submitted to the Erie County Central Police Services Forensic Laboratory for analysis (id.). The shotgun was swabbed for DNA which was later compared to buccal sample of Osorio's DNA (id. at 3-4). After conducting testing procedures (see id. at 4) Erie County Central Police Services' forensic biologist Michelle Lillie found that the shotgun DNA swab contained DNA from at least four individuals, including from at least one male, and Osorio's DNA cannot be eliminated from the DNA mixture (id.). Lillie then concluded that the "probability of randomly selecting an unrelated individual as a possible contributor to the DNA profile of the mixture at the genetic loci above is at least 1 in 49,500 for U.S. individuals" (id. at 4-5; Ex. A).

Osorio contends that the County laboratory "us[ed] a comparatively low analytical threshold of ≥ 50 RFU (greater than or equal to 50 Relative Fluorescence Units)" to conclude that the DNA swab had the mixture of at least four individuals (Docket No. 15, Osorio Memo. at 1). Osorio argues that the laboratory's finding that he could not be excluded from the DNA mixture was the product of "faulty method of analysis that produced intentionally deceptive results," due to the relatively low analytical threshold (id. at 2). He concludes that a Daubert hearing is in order to determine if the laboratory's "method of analysis complies with the

3

evidentiary standards set forth in Daubert and [Federal Rule of Evidence] 702," and, if necessary, suppress the DNA evidence (id. at 2-3). Osorio notes that, using the same methods as the County laboratory used, the laboratory concluded that Gonzalez was not a contributor of DNA on the back seat swab (id. at 6). He supplements this motion with the opinion of his own expert, Dr. Laurence Mueller, that the statistical methods employed by the County laboratory are not generally accepted and overstate the probative value of this DNA evidence (Docket No. 18, Def. Supp'al Memo. at 1, Ex. A, Mueller Expert Report at 4).

The Government replies that defense and Mueller's objections are that the County laboratory did not follow SWGDAM[3] Guidelines (Docket No. 23, Gov't Reply at 5). The Government attached a response from the director of the Forensic Laboratory, Dr. John Simich, which acknowledges one part of the SWGDAM Guidelines but cites to another part to explain the Forensic Laboratory's methodology (id. at 5-6, Ex. A), concluding that the laboratory followed relevant scientific standards (id. at 5-6).

In a separate action, United States v. Gladden, No. 11CR119, defense counsel has raised a similar challenge to the DNA analysis of the Erie County laboratory. A hearing was scheduled in Gladden until the Government moved for reconsideration (Gladden, Docket Nos. 39, 41, 45), with any hearing in Gladden to be scheduled with one in this case if hearings are called for in both cases (id., Docket No. 45).

---

[3]Scientific Working Group on DNA Analysis Methods, see Docket No. 18, Def. Supp'al Memo. Ex. A, Mueller Expert Report at 1.

**DISCUSSION**

I.      Daubert Standard

Daubert and its progeny held that Federal Rule of Evidence 702 imposes " a special obligation upon a trial judge," Kumho Tire, supra, 526 U.S. at 147, to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," Daubert, supra, 509 U.S. at 589 (emphasis added). Justice Blackmun defined the issue in Daubert as the Court determining "the standard for admitting expert scientific testimony in a federal trial," id. at 582. In Daubert, the expert testimony was introduced in support and in opposition to a summary judgment motion, see id. at 582-83. In Kuhmo Tire, defendant moved to exclude the deposition testimony of plaintiff's expert, 526 U.S. at 142, 145. The decision to admit expert testimony is "left to the broad discretion of the trial judge and will be overturned only when manifestly erroneous," McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1042 (2d Cir. 1995).

II.     Application

Defendants seek a hearing on the ultimate admissibility of the expert opinion of the Erie County Forensic Laboratory on its conclusions about DNA tested on the shotgun obtained from the back seat of the vehicle Gonzalez was driving and in which Osorio was a passenger (Docket No. 15, Osorio Memo. in Support of a Daubert Hearing at 1). The Government responds that defendants challenge the expert's opinions and, as such, goes to the weight of that testimony and not its admissibility (Docket No. 23, Gov't Reply in Opposition to Def.'s Supplemental Motion for a Daubert Hearing, at 7), see McCullock, supra, 61 F.3d at 1043, 1044. A Daubert hearing goes to the admissibility of the expert's opinion, see Fed. R. Evid. 702; Daubert, 509 U.S. at 582, 585, and not to the weight that opinion should receive.

5

The defense here is not challenging the viability of the testing done by the Erie County Police Services Forensic Laboratory but the conclusions rendered. These go to the weight of the opinion and not to their admissibility. This is similar to the rejected argument made by defendants in Joseph S. v. Hogan, No. 06 Civ. 1042, 2011 U.S. Dist. LEXIS 76762, at *6-7 (E.D.N.Y. July 15, 2011), where defendants did not contend that plaintiffs' statistical expert would not be helpful but argued that the expert's methodology was unreliable and thus inadmissible. In Joseph S., plaintiffs alleged that hundreds of mentally disabled individuals were discharged from psychiatric hospitals into nursing homes rather than the community, id. at *3-4. Plaintiffs sought to introduce a statistical expert to sample nursing home residents to be interviewed to see if they could live in a community setting. Defendants, the New York State Commissioner of Mental Health and others, objected to this expert claiming that, instead of taking a random sample, plaintiffs' expert "cherry-picked" nursing homes in order to find facilities that favored plaintiffs' contentions, id. at *4-5. On the defense argument that plaintiffs' expert used unreliable methodology, the court held that "questions of reliability often go to weight rather than admissibility," id. at *7 (citing 29 Charles A. Wright, et al., Federal Practice and Procedure § 6264 (2011)), but noting that some expert testimony is "so unreliable that it is more likely to confuse the jury than to assist it" and, as gate keeper, the court should exclude the latter expert opinions, id. at *7.

In this prosecution, the issue is one of the statistical application of data retrieved from the DNA testing. Osorio argues that the DNA analysis is based upon "unreliable methodology and vastly overstated the probative value of the evidence as it relates to" him (Docket No. 18, Def. Supp'al Memo. at 2). As a question of the expert's reliability, it goes to the weight of the

6

evidence, not its admissibility, and that weight can be challenged in traditional methods of cross examination and producing (as Osorio has done here, see Docket No. 18, Ex. A) expert testimony to refute the Government's expert. As noted in Daubert, supra, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." See also United States v. Wade, No. CR, 2011 U.S. Dist. LEXIS 96052, at *22-23 (W.D.N.Y. Aug. 26, 2011) (Skretny, Ch.J.) (despite disagreeing with Government's expert regarding the presence of defendant's DNA through statistical sampling, defense motion denied because defendant's extensive cross-examination of Government's expert). The question of the weight of any testimony, including expert testimony, is best determined at trial, including whatever cross-examination and counter evidence defendants produced.

Thus, defendants' motion for a Daubert hearing (Docket No. 15) is **denied**.

## CONCLUSION

For the reasons stated above, defendants' joint motion for a Daubert hearing (Docket No. 15, Osorio Motion, joined by defendant Gonzalez) is **denied** as discussed above. Defendants' respective motions to join in the motions of the codefendant are **granted**.

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
October 9, 2012